MARSHALL *v.* DOSSETT.

Opinion delivered December 24, 1892.

1. *Attorney and client—Agreement for additional compensation.*
   Where an attorney agreed, for a stipulated fee, to defend a prisoner in jail, a subsequent promise by the latter, made while the relation of attorney and client subsisted, to confer upon the attorney a gratuity, in addition to the stipulated fee, is not binding and will not be enforced.

2. *Gift—Executory agreement not enforced.*
   A promise to make a gift of a chattel confers no title or right of possession, and affords no ground for a remedy against the promisor by replevin or otherwise.

Appeal from Pulaski Circuit Court.

ROBERT J. LEA, Judge.

STATEMENT BY THE COURT.

This is an action of replevin brought by the appellants, who are attorneys at law, for the possession of a mule which, it is claimed, the defendant had promised to deliver to them as a fee for professional services rendered at his instance.   The case was tried on the following agreed statement of facts: " J. M. Dossett, defendant herein, was confined in the Pulaski county jail on a charge of grand larceny, and, on November 14, 1889, asked Marshall & Coffman to defend him, which they agreed to do, if he would pay a fee of $25.   This he agreed to do, and, after they had agreed to defend him for $25, further agreed to give them his mule, in addition to $25, if they cleared him, which they agreed to, but would have defended him on the $25 fee without such agreement being made.   He requested them to write to his wife to come and see him and them, which they did, November 16, 1889.   His wife came to the city soon after, and called at their office, and they told her of said agreement, and that they would defend defendant for

the $25, as agreed on with him, which she agreed to pay as soon as she could get their cotton picked out and sold. On December 10, 1889, she came in and paid the $25, and they gave her a receipt in full, which is attached hereto, that being all that was then due. Afterwards they told Dossett his wife had paid them the $25 agreed on, and he could consider them employed in the case. He again agreed to let them have his mule, in case they cleared him, in addition to the $25. On December 21, 1889, defendant had his trial, and while the jury were considering their verdict in his case, they (Coffman) called his attention to his contract to give them his mule in addition should be be acquitted, and he confirmed his former agreement to do so. After waiting some time for the jury to agree, they left the court room, and soon after the jury returned a verdict of not guilty, and defendant was discharged. After his acquittal he left for his home without seeing them. When they heard of his acquittal, they (Coffman) went out to find him, and while out met Dr. Driver, who lives near him, and sent word to him to come and see them about the fee. On January 3, 1890, they wrote defendant a letter and placed same in an envelope with their name and address on the outside, and addressed it plainly to him, at his post office at Doe Branch, Arkansas, asking him to come and see them and carry out his said agreement in regard to said mule. He failed to come and see them, or to reply to their said letter. They waited until he made his crop and replevied the mule in question, which was the only mule he had at that time, and at the time the fee was agreed on. The said mule is worth $30, and the damages for his detention amount to the sum of $5."

The court found for the defendant, declared that the agreement to deliver the mule was executory, and gave judgment accordingly. The plaintiff filed a motion for a new trial and appealed.

*Marshall & Coffman pro se.*

1. An executory parol contract may be rescinded, altered or discharged, before breach, by a subsequent unexecuted contract of the same nature. The same consideration is sufficient to support the new contract. 1 Smith, Lead. Cas. part 1, p. 664; 58 Ala. 300; 66 *id.* 554; 12 Vt. 625; 5 Barn. & Ad. 58; 10 Ad. & El. 57; 52 Wis. 205; 54 *id.* 191; 128 Mass. 116; 116 *id.* 408; 95 Pa. St. 483; Bishop on Cont. 812–16; 3 A. & E. Enc. of Law. 889–91; 103 Ill. 105; 43 Vt. 581; 6 Exch. 839; 14 Johns. (N. Y.), 330; 9 Pick. 398.

2. This was a conditional sale. 48 Ark. 160; 2 *id.* 465; Tiedeman on Sales, sec. 212; Newmark on Sales, sec. 295; Bennett's Benjamin on Sales, pp. 555–6; 9 Ark. 85.

3. Appellee, for the first time, insists in this court that the contract was void on account of the relation of client and attorney. This claim was not made below, nor did the court pass upon or consider it. Counsel concede the utmost good faith on the part of the attorneys— which is all the law requires—but insist that defendant swindled himself by making such a contract. Here the mule contract was a part of the original treaty of employment of November 14. Moreover, the employment did not take effect and the relation become established until December 10. Then defendant expressly ratified the contract, and again on December 21, after the service had been performed.

*Ratcliffe & Fletcher* for appellee.

It is against public policy that parties once employed as attorneys to defend a man incarcerated and charged with crime should be allowed to enforce a promise for additional compensation, gratuitously made as in this case. Doubtless, Dossett promised all he had, and would have promised forty acres of land had he

owned it. He would have given anything which he thought would have stimulated his attorneys to action or expressed his appreciation of their services, and while we feel sure these gentlemen would not have taken any undue advantage of him to secure such a promise, and did not do so, yet, the principle is the same, and is applicable here. The question is not so much what they have done as what the anxieties, the hopes and fears of Dossett might have impelled him to do. Bishop on Contracts, sec. 740; Bigelow on Fraud, 265 *et seq*.

COCKRILL, C. J., after stating the facts as above reported.

There was a general finding in favor of the defendant. Recurring to the facts set forth in the agreed statement, in order to sustain the finding, we draw the strongest inference in its favor that a jury would have been warranted in deducing if they had tried the cause. The fact that the evidence is reduced to an agreed statement does not change the rule. *Robson* v. *Tomlinson*, 54 Ark. 481.

1. Contracts between attorney and client. In that light the case may be stated thus: An attorney, who had agreed to defend a prisoner confined in jail, for a stipulated fee, afterwards, and while the relation of attorney and client subsisted, accepted a promise from the client to confer upon him a gratuity in the form of a mule, in case the attorney succeeded in restoring him to liberty.

Such is the jealousy with which the courts guard transactions between attorney and client, while that relation exists, that the authorities agree that if the gift had been executed by delivery when the promise was made, under the case found, the client could have revoked it. Weeks on Attorneys, sec. 364; 1 Bigelow on Fraud, 265; *Lecatt* v. *Sallee*, 3 Porter, 115; S. C. 29 Am. Dec. 249.

But the promise to make the gift in this case was not executed. The promise to make a gift of chattels, irrespective of the relation of attorney and client, confers no title or right of possession to the property promised, and affords no ground for a remedy against the promisor by replevin or otherwise.

2. Execu-
tory gift not
enforcible.

The judgment is right and will be affirmed.